**RECEIVED**
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9 / 14 /12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JODY RAY SOUDER,<br>        Plaintiff | CIVIL ACTION<br>SECTION "P"<br>1:11-cv-00024 |
| VERSUS | |
| JAMES LEBLANC, et al.,<br>        Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a motion for summary judgment filed by the defendants in a civil rights case initiated *in forma pauperis* by Jody Ray Souder ("Souder"), pursuant to 28 U.S.C. § 1983, on January 7, 2011 (Doc. 1) and amended on April 1, 2011 (Doc. 11). The named defendants are the State of Louisiana (as owner and operator of the Avoyelles Correctional Center ("ACC") in Cottonport, Louisiana), James LeBlanc ("LeBlanc") (Secretary of the Louisiana Department of Public Safety & Corrections), Lynn Cooper ("Cooper") (warden of ACC), Gary Gremillion ("Gremillion") (the deputy warden in charge of the medical department at ACC), Bobby Stevens (a correctional officer at ACC) and Dr. David Vajnar (a medical doctor employed at ACC). Souder alleges that, while he was incarcerated in the ACC in May 2008, he fell from the bleachers in the recreational yard, was injured, and was denied medical care.[1]

---

[1] Souder also alleges in his complaint (Doc. 1) that unnamed officers at ACC retaliated against him for filing his complaint.

For relief, Souder asks for a declaratory judgment, injunctive relief, appropriate medical care, monetary damages (including punitive), costs and attorney fees.   Souder also asks for a jury trial (Doc. 1).

Souder's claims against LeBlanc and Cooper were dismissed (Doc. 17).  The remaining defendants answered the complaints (Docs. 21, 22) and filed a motion for summary judgment (Docs. 29, 30, 31, 33).  Souder filed a brief in response to defendants' motion (Doc. 35).  Defendants' motion for summary judgment is now before the court for disposition.

<u>Law and Analysis</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to

---

Souder did not allege that any of the named defendants is responsible for retaliation, there is no evidence supporting this claim, and Souder did not add this claim to his list of "legal claims" (Doc. 1) or pursue this claim in his amended complaint (Doc. 11).  Therefore, Souder's allegation of retaliation will not be discussed.

it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory

allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Statute of Limitations

Defendants did not raise the defense of prescription, or expiration of the statute of limitations. However, the court can raise the affirmative defense of expiration of the statute of limitations sua sponte in in forma pauperis actions. Stanley v. Foster, 464 F.3d 565, 568 (5th Cir. 2006). Dismissal is appropriate if it is clear from plaintiff's allegations that the claims asserted are barred by the applicable statute of limitations. Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999). Also, Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

State law supplies the applicable limitations period and tolling provisions in federal actions. Harris, 198 F.3d at 157, and cases cited therein. Section 1983 actions in Louisiana are governed by a one year prescriptive period. La.C.C. art 3492; Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938 (1985); McGregor v. LSU Bd. of Supervisors, 3 F.3d 850, 864 (5th Cir. 1993), cert. den., 510 U.S. 1131, 114 S.Ct. 1103 (1994). This prescriptive period commences to run from the date injuries or damages are sustained, Washington v. Breaux, 782 F.2d 553, 554 (5th Cir. 1986)

4

or, under the doctrine of contra non valentum,[2] from the time the plaintiff knew or could reasonably have known he had a cause of action, McGregor, 3 F.3d at 865.  Also, Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1322 (La. 1979).

### 1.

Souder contends that, while he was incarcerated in the ACC in May 2008, he fell from the bleachers in the recreational yard and was subsequently denied medical care for his right shoulder and bicep.

Souder alleges that he fell off the bleachers in May 2008 and was denied medical care for his right shoulder and bicep at that time.  Souder further alleges Dr. Vajnar sent Souder to the emergency room in March 2009, where a bicep tendon rupture was diagnosed (Doc. 33, Ex. B-3, pp. 38-39, 40); however, when the hospital doctor tried to schedule surgery on Souder's right bicep (See Doc. 33, Ex. C-2, pp. 2-3, 15-18), Souder alleges the Officer Stevens would not allow him to have the surgery.  Souder contends that, in October 2009, Dr. Vajnar told him it was too late to surgically repair his bicep.  Souder also alleges defendants cancelled his MRI in 2008.  The medical records show that Souder had an MRI in June 2008, but it was for his spine and not his

---

[2] The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred.  McGregor, 3 F.3d at 866.

shoulder (Doc. C-5, p. 90, 93, 94).  Souder also contends he had a shoulder MRI on January 11, 2010, and that Dr. Vajnar discussed his MRI with him on February 18, 2010, explaining that his right bicep muscle was severed and it was too late to repair it.

Under the facts presented by Souder in his complaint, any cause of action he may have had culminated in March 2009.[3] Therefore, any cause of action Souder may have had prescribed in March 2010, and this suit was not filed until almost a year later, in January 2011.  Souder's action is clearly time-barred.

2.

In the alternative, Souder has failed to prove he was denied timely medical care for a torn bicep after he fell from the bleachers in May 2008.

Souder's medical records from LSU Health Sciences Center in Shreveport, Louisiana show that, on May 17, 2008, he fell about five feet when bleachers collapsed at ACC (Doc. 33-9, pp. 2-3, 24-25, 58).  Souder initially complained of severe right foot pain and was sent to the emergency room, where he was diagnosed with an ankle sprain (Doc. 33-6, pp. 11-13).  He returned to the hospital on May 22, 2008, and was diagnosed with a hairline fracture on his fibula (Doc. 33-3, p. 95, Doc. 33-6, pp. 5-6).  In June 2008, Dr.

---

[3] Dr. Vajnar's subsequent explanations to Souder of why outside doctors would not perform surgery to repair his bicep were not a denial of medical care by the defendants.  As stated by Souder, Dr. Vajnar simply explained that they had waited too long to do the surgery, so it was no longer possible to do it.

Vajnar requested an MRI for Souder's back (Doc. 33-3, p. 90); the hospital did not do the MRI in June, but made Souder and appointment (Doc. 33-3, p. 86) and it was done in July 2008 (Doc. 33-1, pp. 14-15). In July through September 2008, Souder complained of continuing pain in his ankles (Doc. 33-3, pp. 67-73, 85). In October 2008, Souder complained of chronic cervical and lumber pain with radiculopathy and weakness (Doc. 33-3, pp. 61-62, 66), and was diagnosed with a back strain (Doc. 33-9, pp. 24-25, 58). In November 2008, Souder returned to the medical center and complained of tingling in his left hand and lower back pain with pain radiating down his left leg, but not he did not complain about his bicep or shoulder (Doc. 33-3, p. 55).

On March 5, 2009, Souder was seen for a bicep injury; he reported that, when he fell in May 2008, he had noticed a snap and pop in his right arm and had immediate swelling, but no significant discomfort; the swelling resolved but Souder stated his right arm was significantly weaker than the left (Doc. 33-9, pp. 2-3). Souder reported that, in February 2009, he tried to lift something with his right arm (or closed his cell door with his right arm) and felt a pop in his right shoulder (Doc. 33-1, p. 33; Doc. 33-3, p. 38). Souder's arm began to hurt and his bicep had not looked "right" since then (Doc. 33-3, p. 38; 33-9, pp. 2-3; Doc. 33-6, pp. 36, 42). When Souder saw a doctor for that injury in March 2009, the doctor noted effusion and pain in Souder's right upper arm and

7

a decreased range of motion due to pain (Doc. 33-3, pp. 38-39).
Souder was administered several shoulder tests (Hawkins, AC
compression, and supraspinatus, Speed, and Yergason), and he was
diagnosed with a "proximal right bicep tear, chronic" (Doc. 33-2,
pp. 33-34; Doc. 33-9, p. 51).  Souder agreed, on March 5, 2009, to
non-surgical management of his bicep tendon tear due to the chronic
nature of his injury, and because surgical fixation may not be in
his best interest since he is in inmate and the infection rate is
high (Doc. 33-9, pp. 2-3).  When Souder returned to ACC from the
medical center in Shreveport on March 5, 2009, he wrote a letter
(apparently to Dr. Vajnar at ACC) stating that the medical center
doctor initially ordered an MRI of Souder's shoulder, then
retracted that order and said it was too much of a risk to do
surgery on Souder's arm because he could hit a nerve, resulting in
Souder losing use of his arm (Doc. 33-4, p. 10).

Subsequently, an MRI of Souder's right shoulder on January 11,
2010 showed tendinopathy (biceps tendinitis) of the supraspinatus[4]
tendon but no definite tears, a degenerative cyst along the
superior lateral aspect of the cortical service of the humeral

---

[4] Supraspinatus means "a muscle of the back of the shoulder
that arises from the supraspinous fossa of the scapula, that
inserts into the top of the greater tubercle of the humerus, that
is one of the muscles making up the rotator cuff of the shoulder,
and that rotates the humerus laterally and helps to abduct the
arm."  MEDLINEplus Health Information, Merriam-Webster Medical
Dictionary: Supraspinatus, available at http://www.nlm.nih.gov/
mplusdictionary.html (a service of the U.S. National Library of
Medicine and the National Institutes of Health).

head, hypotrophic changes about the AC (acromioclavicular) joint due to chronic AC joint arthritis that exerts intrinsic compression on the mild tendinous[5] junction of the supraspinatus and tendon, and could be associated with impingement type symptomatology, and mild degenerative changes within the labrum; it was specifically noted that the biceps tendon showed no signs of dislocation (Doc. 33-5, pp. 37-38). Souder was diagnosed with tendinopathy (Doc. 33-7, p. 47).

The numerous medical records show Souder has been provided with extensive medical care since he fell in 2008; however, nothing in the medical records indicates that Souder suffered a complete bicep tear in 2008 that required surgical repair. The doctor in Shreveport cancelled the MRI in March 2009 and Souder agreed to conservative treatment of his shoulder/bicep for reasons outlined by the Shreveport doctor; therefore, it does not appear that defendants were responsible for cancellation of his MRI at that time. Also, there is nothing in the record to support Souder's allegation that indicates Dr. Vajnar tried to find a doctor in New Orleans to surgically repair Souder's bicep.

Moreover, it does not appear that Souder's bicep was "completely severed" in 2008, as alleged by Souder, because his

---

[5] Tendinous means "consisting of tendons." MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Tendinous, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

January 2010 MRI showed it was not displaced;[6] instead, Souder has tendinopathy, apparently due to re-injuring his bicep in February 2009.   The medical records indicate that Souder's fall from the bleachers in 2008 injured but did not "sever" his bicep, Souder did not need surgery on his bicep even after he re-injured it in 2009 and Souder agreed to non-surgical treatment.

Therefore, Souder's claim that he was denied medical care for a torn right bicep is meritless.   It is noteworthy that Souder's voluminous medical records indicate he was afforded outside medical care after his fall from the bleachers for his injuries, including x-rays and MRIs of his ankle and spine, and continues to receive medical care from the Shreveport medical center clinics for his back pain and other medical problems (Doc. 33, Exs).   There is no evidence that Souder has been denied medical care.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted and Souder's action should be dismissed with prejudice.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Souder's action be DISMISSED WITH PREJUDICE as time-barred and

---

[6] Biceps tendon tears may be either partial or complete.   A partial tear does not completely sever the tendon.   American Academy of Orthopaedic Surgeons, OrthoInfo: Biceps Tendon Tear at the Shoulder, available at http://orthoinfo.aaos.org/topic.cfm?topic=A00031.

defendants' motion for summary judgment (Doc.29) be DENIED AS MOOT.

In the alternative, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED and Souder's action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 13th day of September 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

11